UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WILLIAM J. BECKER,

      Plaintiff,

v.                                        Case No. 3:14-cv-104-J-34JBT

BARRY REDDISH, et al.,

      Defendants.
_____


## ORDER

    This matter is before the Court on Defendants' Motion to Dismiss filed on September 21, 2016, on behalf of Defendants Julie Jones, Barry Reddish, Lourdes Nieves, and William Wright.  (Defendants' Motion; Doc. 32).  On December 14, 2016, Plaintiff, William Becker, filed his response in opposition to Defendants' Motion.  See Plaintiff's Response to Defendants' Motion to Dismiss (Response; Doc. 35).  Defendants' Motion is ripe for review.

## I. Second Amended Complaint[1]

    In the Second Amended Complaint (Second Am. Com.; Doc. 15), Becker names the following persons, individually and in their official capacities, as defendants: Julie Jones, Secretary of the Florida Department of Corrections (FDOC); Barry Reddish, Warden of Lawtey Correctional Institution (L.C.I.); Lourdes Nieves, L.C.I.'s property room

---

[1] On January 23, 2014, Becker filed his original complaint.  (Doc. 1).  Before Defendants filed an answer, Becker filed an amended complaint on August 26, 2014. (Doc. 10).  After review of the amended complaint, the Court ordered Becker to file a proper amended complaint, which he did on October 21, 2015.  (Doc. 12).  As such, the Second Amended Complaint is the operative pleading in this action.

sergeant; and William Wright, L.C.I.'s chaplain (collectively Defendants).  Becker asserts Defendants violated his rights under (1) the Establishment Clause and Free Exercise Clause of the First Amendment, (2) the Equal Protection Clause of the Fourteenth Amendment, (3) the Eighth Amendment, (4) the Religious Land Use and Institutionalized Persons Act[2] (RLUIPA), (5) the Florida Constitution Article I, section 3, and (6) the Florida Religious Freedom Restoration Act[3] (FRFRA).  In support of his claims, Becker alleges that on August 28, 2012, while he was housed at L.C.I., Defendant Nieves took his prayer shawl, tulasi bead necklace, and krsna pendant away from him, and placed the items in storage as confiscated property.  Second Am. Com. at 9.  Seeking a return of those items, Becker explained to Defendant Nieves that the items were used for his daily religious practice, and that he possessed the items for such use in other correctional institutions. Second Am. Com. at 9.  Nevertheless, Defendant Nieves violated FDOC's policy of allowing an inmate to possess items found on a "personal property list" and told Becker that Defendant Wright was the only person who could determine whether the items were "needed" and allowed at L.C.I.  Second Am. Com. at 9.

Becker then sought permission for the return of the items from Defendant Wright. However, Defendant Nieves did not allow Becker to provide to Defendant Wright proof that the items were already part of Becker's personal property.  Second Am. Com. at 9. Becker alleges Defendant Wright failed to research his "faith articles" and relied solely on the Religion Technical Guide to reject Becker's request for the return of the items.  Second Am. Com. at 12.  Becker asserts that he suffered emotional distress due to the items

---

[2] 42 U.S.C. §§ 2000cc-1 – 2000cc-5.
[3] Fla. Stat. § 761.03 (2012).

being taken away because he is not able to pray properly in accordance with his religion. Second Am. Com. at 10.

On October 1, 2013, Becker filed a formal grievance requesting the return of his personal items. Second Am. Com. at 14. According to Becker, Defendant Reddish ignored that formal grievance. Second Am. Com. at 14. Thereafter, Becker filed an appeal with Defendant Jones, but Defendant Jones "ignor[ed] the facts stated in [his grievance] appeal." Second Am. Com. at 13. In his Second Amended Complaint, as relief, Becker seeks (1) the return of his prayer shawl, tulasi bead necklace, and krsna pendant, including the costs for the return of his property; (2) declaratory and injunctive relief, directing FDOC to allow him and other Hindu-Krishna Consciousness followers the use of a prayer shawl, tulasi bead necklace, and krsna pendant while incarcerated; and (3) an unspecified amount of compensatory and punitive damages. Second Am. Com. at 24-27.

## II. Summary of Arguments

Defendants contend the Second Amended Complaint should be dismissed because Becker failed to exhaust his administrative remedies. Defendants' Motion at 4-9. In support of this contention, they assert that (1) Becker did not file an informal grievance until almost a year after the items were taken; (2) there is no record that Becker filed a formal grievance; (3) Becker's grievance appeal was return without action; (4) Becker's grievance record was not in compliance with the required timeframes set by the FDOC; and (5) Becker failed to avail himself of a second opportunity to complete the grievance process. Defendants' Motion at 4-9. Alternatively, Defendants assert that Becker's claims are due to be dismissed on the merits. With regard to Becker's

substantive claims, Defendants contend that (1) the FRFRA claims and the claims for damages under 42 U.S.C. § 1983 against them in their official capacities are barred by their Eleventh Amendment immunity; (2) money damages are not available under RLUIPA; (3) Becker fails to allege a physical injury, and therefore, fails to state a claim for compensatory and punitive damages against them in their individual capacities under 42 U.S.C. § 1983; and (4) Becker fails to state a claim against Defendants Jones and Reddish based on their alleged lack of response or denial of a grievance. Defendants' Motion at 9-16. Further, Defendants contend Becker's claim for injunctive relief contains redundant defendants that should be dismissed from this action. Defendants' Motion at 13-14. In this regard, Defendants submit that the injunctive relief claim can be brought solely against Defendant Jones since she has the ultimate authority to enact policy changes. Defendants' Motion at 13-14.

Responding to the Motion to Dismiss, Becker asserts that he did exhaust his administrative remedies. Response at 7-20. Specifically, he states that he submitted his informal grievance on September 5, 2013; his formal grievance on October 1, 2013; and then his grievance appeal on November 13, 2013. Response at 14. Turning to the merits of his claims, Becker argues that despite the case law suggesting that his claims for damages under § 1983 against Defendants in their official capacities are barred, the Court should "reserve this dispute as a trial issue." Response at 22. Further, he argues that his FRFRA claims can be heard "under the diversity jurisdiction model" because his domicile is in New Jersey while Defendants all reside in Florida. Response at 22. Additionally, Becker disputes Defendants' contention that Defendants Reddish, Nieves, and Wright are redundant defendants in the injunctive relief claim. He asserts that

4

Defendant Jones is not required to provide him with the return of the items, but that it is the responsibility of the chaplain of the correctional institution to do so.  Response at 24-25.  Lastly, Becker leaves "it to the discretion of the court to maintain or remove Julie Jones as defendant" for the claim based on her denial of the grievance appeal, but maintains that his claim against Defendant Reddish for Reddish's failure to respond to the formal grievance should remain.

## III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA) requires an inmate who challenges prison conditions to "properly exhaust" all available administrative remedies before filing an action under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997(e)  ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  Proper exhaustion is mandatory and "demands compliance with an agency's deadlines and other critical procedural rules" governing the administrative process.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006); see also Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015) ("The PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process."); Jones v. Bock, 549 U.S. 199, 918-19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Notably, the Supreme Court in Ross v. Blake, 136 S. Ct. 1850 (2016), instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative

remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016).  For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'"  Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

In Ross, the Supreme Court identified three circumstances in which administrative remedies would be considered unavailable.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Ross, 136 S. Ct. at 1859.  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  Id.  Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1860.

Applying this legal framework, the Court turns to the parties' contentions regarding exhaustion in this case.  Except for certain circumstances that do not apply here, inmates incarcerated by the FDOC must follow a three-step grievance process to properly exhaust their administrative remedies.  See Fla. Admin. Code r. 33-103.001 through 33-103.018. First, an inmate must file an informal grievance with a designated prison staff member within twenty days of "when the incident or action being grieved occurred."  Fla. Admin. Code r. 33-103.011(1)(a).  The staff member is required to respond to the grievance in writing within ten days of the receipt of the informal grievance.  Fla. Admin. Code r. 33-103.011(3)(a).  Second, if the issue is not resolved by the informal grievance, the inmate

6

must file a formal grievance with the correctional institution's warden no later than fifteen calendar days from "the date on which the informal grievance was responded to." Fla. Admin. Code r. 33-103.011(1)(b). The warden, assistant warden, or deputy warden then has up to twenty days from receipt of the formal grievance "to take action and respond." Fla. Admin. Code r. 33-103.011(3)(b). Third, if the issue is still not resolved, the inmate must then file an appeal to the Office of the Secretary for the FDOC within fifteen "calendar days from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code r. 33-103.011 (1)(c). A representative for the Office of the Secretary of the FDOC must respond to the grievance appeal within thirty days of its receipt. Fla. Admin. Code r. 33-103.011(3)(c). Unless the inmate has agreed to an extension of time for a response to his grievance, "expiration of a time limit at any step in the process shall entitle the [inmate] to proceed to the next step of the grievance process." Fla. Admin. Code r. 33-103.011 (4).

The failure to properly exhaust administrative remedies will bar an inmate from pursing a claim in federal court. See Woodford, 548 U.S. at 92 ("A state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one complete round of the State's established appellate review process." (internal quotations omitted)). That said, failure to exhaust under the PLRA is an affirmative defense a defendant must plead and prove in a motion to dismiss. See Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (finding exhaustion of administrative remedies is a matter in abatement

and an exhaustion defense should therefore, be raised in a motion to dismiss).   The

Eleventh Circuit has established a two-step process for deciding motions to dismiss for

failure to exhaust administrative remedies.   See Turner v. Burnside, 541 F.3d 1077, 1084

(11th Cir. 2008).

> First, district courts look to the factual allegations in the motion
> to dismiss and those in the prisoner's response and accept
> the prisoner's view of the facts as true. The court should
> dismiss if the facts as stated by the prisoner show a failure to
> exhaust.   Second, if dismissal is not warranted on the
> prisoner's view of the facts, the court makes specific findings
> to resolve disputes of fact, and should dismiss if, based on
> those findings, defendants have shown a failure to exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal

citations omitted).

Becker's Response as well as his Complaint including exhibits reflect the following

facts on the issue of exhaustion.   Becker alleges that he "took some precautions to

properly complete the [grievance] process, in spite of the danger to his personal safety."

Response at 11.   Specifically, Becker (1) "wrote the name of an inmate as witness every

time he posted a grievance into the mailbox," (2) made handwritten copies of his

grievances, and (3) allowed four days for "the inter-institutional mailing system to get the

grievance to the respondent" and four days to receive the response to the grievance once

a response had been made. Response at 11.

On September 5, 2013[4], Becker submitted an informal grievance seeking the

return of his prayer shawl, tulasi bead necklace, and krsna pendant.   Response at 14.

---

[4] The Court recognizes that September 4, 2013, is the date on the informal grievance attached as Exhibit
1 of Becker's Complaint.  In his Response, however, Becker uses September 5, 2013, in his argument to
prove that he exhausted his administrative remedies.  Response at 12.  Use of either date by the Court
does not change the outcome of this action.

This initial grievance was untimely.   See Fla. Admin. Code r. 33-103.011(1)(a). Nevertheless, after he did not receive a response to his initial grievance within ten days, Becker proceeded with the grievance process and filed a formal grievance on October 1, 2013.  Response at 14.  As with his informal grievance, Becker did not receive a response to his formal grievance.   Response at 15.   Therefore, he again proceeded with the grievance process and filed a grievance appeal on November 11, 2013.  Response at 14. On December 4, 2013, the FDOC returned Becker's grievance appeal without action on the basis that Becker had failed to comply with the grievance process.   Defendants' Motion, Ex. D at 4.  However, Becker did not receive the response for the grievance appeal until February 17, 2015, when he was housed at Baker Correctional Institution. Response at 4.   In the meantime, on December 31, 2013, the Assistant Warden responded to Becker's informal grievance with a denial.  Second Am. Com., Ex. 1 at 1; Defendants' Motion, Ex. C at 6.  In doing so, the Assistant Warden gave Becker "15 days from the date of the response to file at the next level. . ."  Second Am. Com., Ex. 1 at 1; Defendants' Motion, Ex. C at 6.  Becker did not file a formal grievance.

    In light of the facts above, at the first step of the Turner analysis, the Court concludes that Becker failed to exhaust his administrative remedies.  Becker challenges the August 28, 2012 taking of his prayer shawl, tulasi bead necklace, and krsna pendant by prison officials.  For reasons he fails to address, Becker waited a full year, until September 5, 2013, to submit an informal grievance complaining about the taking of his belongings.  See Second Am. Com., Ex. 1.  Although Becker submitted this informal grievance, he did not do so until over a year after his items were taken.  Regardless of the fact that he later filed a formal grievance and a grievance appeal, because Becker's

initial grievance was untimely, it would not constitute proper exhaustion. <u>See</u> Fla. Admin. Code r. 33-103.011(1)(a); <u>Dimanche</u>, 783 F.3d at 1210.   As such, had nothing else happened with regard to Becker's informal grievance, this action would be due to be dismissed for failure to exhaust.  But something more did happen.

Despite the fact that the initial grievance was untimely and ineffective, the Assistant Warden nevertheless responded to it.  In doing so, he gave Becker a renewed opportunity to exhaust his administrative remedies by filing a formal grievance within fifteen days of his receipt of the response.   Becker did not do so.   Thus, despite having had two opportunities to exhaust his administrative remedies with respect to the taking of his belongings Becker failed to do so in accordance with FDOC procedures.   As such, Defendants' Motion to Dismiss is due to be granted.

In reaching this conclusion, the Court considered Becker's conclusory statement regarding some unspecified "danger to his personal safety."   However, Becker does not allege the danger was from prison officials or that the danger hindered his ability to file a grievance.  The Court also considered Becker's assertion that the grievance process was unavailable because his grievances were ignored.   While there was a delay in the response to Becker's informal grievance, the informal grievance was not ignored.  The delayed response was in fact a benefit for Becker because the Assistant Warden treated the informal grievance as timely and gave Becker a chance to exhaust his administrative remedies belatedly.  As a result, Becker presents no facts to support even an inference that the grievance process was unavailable to him.  Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.  Defendants' Motion to Dismiss is **GRANTED**.

2.  Plaintiff's Complaint is **DISMISSED without prejudice**.

3.  The Clerk is directed to close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of March, 2017.

MARCIA MORALES HOWARD
United States District Judge

sflc
copies to:
Plaintiff
Counsel of Record